LORI-ANNE HARNEY,

        Plaintiff,

v.                                 Case No:  2:16-cv-340-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff Lori-Anne Harney seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.    Issues on Appeal[1]

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") findings regarding Plaintiff's residual functional capacity ("RFC"); (2) whether the ALJ properly assessed Plaintiff's credibility; and (3) whether the ALJ properly considered the disability decision of a nongovernmental agency.

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

## II.  Procedural History and Summary of the ALJ's Decision

On November 15, 2011, Plaintiff filed her application for a period of disability and DIB.  Tr. 161-64.  Plaintiff alleged disability beginning on November 10, 2010 due to depression, chronic fatigue syndrome ("CFS") and fibromyalgia.  Tr. 87.  The claim was denied initially and upon reconsideration.  Tr. 108-12, 124-28.  Plaintiff requested a hearing before an ALJ and initially received a hearing before ALJ M. Dwight Evans on May 22, 2014.  Tr. 140-57.  Plaintiff, who was represented by an attorney, and vocational expert Joyce Ryan appeared and testified at the hearing. *See* Tr. 39-86.

On September 30, 2014, the ALJ issued a decision finding Plaintiff not disabled from November 10, 2010, the alleged onset date, through the date of the decision. Tr. 18-33.  At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015 and has not engaged in substantial gainful activity from November 10, 2010, the alleged onset date.  Tr. 20.  At step two, the ALJ found that Plaintiff has the following severe impairment: chronic fatigue fibromyalgia syndrome.  *Id.*  At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 21.  The ALJ then determined that Plaintiff has the RFC to perform the full range of light work.[2]  *Id.*  Next, the ALJ

---

[2] The regulations define light work as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very

found that Plaintiff is capable of performing her past relevant work as a customer service representative, an insurance information clerk, an accounting clerk, a quality assurance clerk, a data analyst (statistician) and an administrative assistant. Tr. 33. Thus, the ALJ concluded that Plaintiff had not been under a disability from November 10, 2010, the alleged onset date, through September 30, 2014, the date of the decision. *Id.*

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on March 25, 2016. Tr. 1-3. Accordingly, the ALJ's September 30, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on May 9, 2016. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 15, 16.

### III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1),

---

little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

423(d)(1)(A); 20 C.F.R. § 404.1505(a).[3]   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.   *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*,

---

[3] The Court notes that after Plaintiff filed her application and the ALJ issued the decision, certain Social Security rulings and regulations have been amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016).   The Court will apply rules and regulations in effect at the time of the ALJ's decision, unless regulations specify otherwise. *Green v. Soc. Sec. Admin., Comm'r*, — F. App'x —, 2017 WL 3187048, at *4 (11th Cir. July 27, 2017) (in reviewing the ALJ's decision, refusing to apply SSR 16-3p retroactively because "administrative rules are not generally applied retroactively."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").   *See also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (holding that when the Appeals Council denies review of the ALJ's decision, appellate courts review the ALJ's decision as the Commissioner's final decision).

841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of

the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

### a. *Whether substantial evidence supports the ALJ's findings regarding Plaintiff's RFC*

The ALJ found that although Plaintiff's chronic fatigue fibromyalgia syndrome is a severe impairment, she has the RFC to perform the full range of light work. Tr. 20-21. Plaintiff argues that despite finding her CFS severe, the ALJ erred by not articulating his consideration of her CFS in violation of Social Security Ruling ("SSR") 14-1p. Docs. 22 at 10-12, 26 at 3-4. Plaintiff further asserts that in assessing her RFC, the ALJ did not properly consider her non-exertional limitations and symptoms caused by her CFS. Docs. 22 at 12-13, 26 at 1-2. The Commissioner responds that in determining Plaintiff's RFC, the ALJ properly considered her CFS, and substantial evidence supports the ALJ's RFC findings. Doc. 23 at 4-11.

SSR 14-1p explains that CFS is "a systemic disorder consisting of a complex of symptoms that may vary in frequency, duration, and severity." SSR 14-1p, 2014 WL 1371245, at *2 (Apr. 3, 2014). CFS "causes prolonged fatigue lasting 6 months or more, resulting in a substantial reduction in previous levels of occupational, educational, social, or personal activities." *Id.* The symptoms of CFS include sore

throat, muscle pain, multi-joint pain without joint swelling or redness, headaches, disturbed sleep patterns and visual difficulties. *Id.* at *3. The ruling further notes that people with CFS may have co-occurring symptoms, such as fibromyalgia. *Id.* Regardless of CFS's nature, SSR 14-1p provides that the Commissioner will adjudicate claims involving CFS "just as [the Commissioner does] for any impairment." *Id.* at *8. Accordingly, an ALJ assesses the RFC of a claimant with CFS "based on all the relevant evidence in the record" pursuant to 20 C.F.R. §§ 404.1545(a) and 416.945(a). *Id.* at *9.

The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ in the fourth sequential step has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The ALJ considers a claimant's age, education, work experience, and whether she can return to her past relevant work in determining her RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and bases the RFC assessment upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Plaintiff argues that the ALJ did not fully consider her symptoms related to CFS, such as her concentration difficulties and memory loss, or articulate his

consideration of her CFS.   Docs. 22 at 11-12, 26 at 3-4.   On the contrary, the Court

finds that the ALJ extensively discussed Plaintiff's symptoms and medical evidence

related to her CFS and properly assessed her RFC.   The ALJ first summarized in

detail Plaintiff's relevant medical and other records from June 23, 2010 to May 21,

2014, which encompassed Plaintiff's reports of her activities and symptoms, results

of mental and physical examinations and physicians' recommendations and opinions.

Tr. 21-27.   Rather than repeating the ALJ's discussion, the Court will summarize

and discuss the ALJ's relevant findings.

    After his lengthy discussion of the record, the ALJ acknowledged that Plaintiff

has CFS and a range of related symptoms:

> As outlined in Social Security Ruling 14-1p, [Plaintiff] does meet the
> Center of Disease Control and Prevention's (CDC) definition of [CFS],
> and the record documents diagnostic symptoms and a range of other
> symptoms indicative of [CFS].   Symptoms included malaise, self-
> reported short-term memory and concentration deficits causing a
> reduction in previous levels of functioning, muscle pain, multi-joint pain
> without swelling or redness, headaches, waking unrefreshed, muscle
> weakness, disturbed sleep patterns, orthostatic intolerances,
> cardiovascular abnormalities (i.e., palpitations), and gastrointestinal
> discomfort as well as co-occurring fibromyalgia.

Tr.   29.

    Nonetheless, the ALJ determined that although he gave "the benefit of every

doubt to [Plaintiff] when she says she experiences pain and has limited her to light

work[,] . . . there exists little objective evidence in the record to substantiate

[Plaintiff's] alleged disabling limitations."   Tr. 28.   He found that "despite

[Plaintiff's] continued complaints of pain, she has not received any further treatment

other than prescription medication[, and] . . . also takes note of minimal abnormal

clinical examination findings and a near normal internal medicine consultative examination." *Id.* The ALJ further observed "no treating or examining physician has offered an opinion that [Plaintiff] is restricted from the performance of all work." *Id.*

In support, the ALJ specifically discussed Plaintiff's reported ability to perform daily activities, such as living alone, checking her mail and e-mail and feeding and grooming her pets. *Id.* The ALJ determined these daily activities "do not indicate a mental impairment that interferes with daily functioning." *Id.* The ALJ then discussed Plaintiff's alleged symptoms in light of the absence of acceptable medical evidence to support such symptoms:

> [Plaintiff] alleges severe and disabling levels of chronic fatigue and has been assessed with a chronic fatigue fibromyalgia syndrome by treating providers at Lee Physicians Group, none of [whom], however, [is] an acceptable medical source as set forth in 20 CFR 404.1513. [SSR]14-1p also states that a licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide appropriate evidence of a medically determinable [CFS]. However, evidence from other acceptable medical sources, such as psychologists and psychiatrists, as well as evidence from medical sources we do not consider "acceptable medical sources" has been considered in evaluating the severity and functional effects of [CFS] although no treating medical source has assessed any functional limitations attributed to [CFS]. Myalgic encephalomyelitis is included as a subtype of chronic fatigue syndrome; however, encephalopathy was only suspected by the neurologist in 2010. [Plaintiff] has not seen a neurologist since 2010 and has never undergone a sleep study or further work-up for any medically determinable neurological disorder since 2010.
>
> . . .
>
> [T]here is no evidence or physical examination findings over a period of at least six consecutive months to support medical signs of palpably swollen or tender lymph nodes; nonexudative pharyngitis; persistent, reproducible muscle tenderness on repeated examination including

positive tender points; frequent viral infections with prolonged recovery; sinusitis; ataxia; extreme pallor; or pronounced weight change. The claimant did have positive antibody titer to Epstein-Barr in 2010, but there is no evidence of prolonged recovery or treatment for the virus. A MRI of the brain in 2010 showed "mild" periventricular white matter changes, which were never further evaluated and were of uncertain significance. She did undergo gastric bypass in 2007, but no treating medical source as attributed any of her alleged symptomatology to gastric bypass. She has never undergone tilt table testing due to alleged dizziness. She has alleged palpitations, but two EKGs were normal and palpitations were felt to be secondary to stimulant medication. Lab studies in 2013 showed a positive ANA and a rheumatologist reportedly assessed [Plaintiff] with fibromyalgia, but there are no treating notes of record from the rheumatologist or evidence suggesting the elevated ANA contributes to her chronic fatigue syndrome. She has never undergone a sleep study or been diagnosed with a medically determinable sleep disorder. She alleges chronic headaches, but the totality of evidence does not support severe medically determinable headaches, or headaches of the frequency and/or severity to result in more than mild limitations in work-related activities for 12 continuous months. *Allegations of disabling short-term memory and concentration problems are not supported by the medical evidence of record.* Overall, mental status evaluations are normal other than a depressed and constricted mood/affect. In April 2014, her treating psychiatrist at SalusCare noted no underlying medical cause for her chronic fatigue. The absence of any medical opinion from any treating or examining source regarding any work limitations is a substantial omission and undermines the alleged symptoms. . . .

Tr. 28-29 (emphasis added).

Plaintiff argues the ALJ "merely" assessed Plaintiff's RFC without fully considering or articulating his consideration of her CFS symptoms and their effect on her ability to work.   Docs. 22 at 11-12, 26 at 3-4.   Instead, the Court finds the ALJ extensively and thoroughly discussed Plaintiff's CFS and related symptoms.   In fact, the ALJ explicitly acknowledged Plaintiff's physical and mental symptoms, including short-term memory and concentration problems, and gave "every benefit of doubt" to Plaintiff's reported symptoms and alleged limitations on her ability to work.   Tr. 28-

29.     Nonetheless, after thoroughly reviewing Plaintiff's evidence as a whole, the ALJ found there is insufficient objective evidence supporting her symptoms and the degree of limitations she alleged.   Tr. 28-29.   Accordingly, the Court finds without merit Plaintiff's arguments that the ALJ did not fully consider or articulate his consideration of her CFS symptoms and their impact on her ability to work.   Docs. 22 at 11-12, 26 at 3-4.

        Next, Plaintiff argues the ALJ did not properly account for all the limitations caused by her CFS in violation of SSR 14-1p.   Docs. 22 at 12-13, 26 at 2-4.   On the contrary, SSR 14-1p does not require the ALJ to give any special consideration to Plaintiff's CFS, but only requires him to assess her CFS and RFC, "just as [he does] for any impairment," based on the entire record.   SSR 14-1p, 2014 WL 1371245, at *8 (Apr. 3, 2014).   In fact, RFC assessments and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination.").   Similarly, "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly."   *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389-409).   Accordingly, the ALJ properly exercised his discretion by assessing the conflicting evidence related to Plaintiff's CFS and RFC, just as he would do with any other impairments.   *See id.*; SSR 14-1p, 2014 WL 1371245, at *8 (Apr. 3, 2014); SSR

96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2); *Beegle*, 482 F. App'x at 486.

To the extent Plaintiff believes she has greater limitations than those the ALJ found, it is her burden to establish them. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."); *see* 20 C.F.R. § 404.1545(a)(3) ("[A claimant is] responsible for providing the evidence [the Commissioner] will use to make a finding about [the claimant's RFC.]"). Plaintiff attempts to meet her burden by arguing her symptoms could "reasonably affect" her ability to perform work and pointing to her documented symptoms and treatment history. Docs. 22 at 11-12, 26 at 2-4. This evidence does not establish Plaintiff's additional limitations because "[t]he mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work, nor does it 'undermine the ALJ's determination' regarding her ability to work." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)).

Rather, as the ALJ noted in his decision and Plaintiff does not dispute, "no treating medical source has assessed any functional limitations attributed to [Plaintiff's CFS,]" and "[t]he absence of any medical opinion from any treating or examining source regarding any work limitations is a substantial omission." Tr. 28-29; *see* Docs. 22 at 10-13, 26 at 1-4. Thus, the Court finds the ALJ properly and

thoroughly evaluated Plaintiff's symptoms and evidence related to her CFS, and substantial evidence supports the ALJ's assessment of her RFC.

### b. Whether the ALJ properly assessed Plaintiff's credibility

At step one, the ALJ discussed that Plaintiff received unemployment benefits in 2011 and 2012.[4]  Tr. 20.  The ALJ found that "[a] recipient of unemployment benefits must certify that they are physically and mentally able to work as a prerequisite for benefits[, and Plaintiff's] certification of her ability to work to receive monetary unemployment benefits, while alleging to the Administration that she cannot work, significantly erodes her credibility."  *Id.*

Plaintiff argues the ALJ erred by discounting her credibility on this basis because receiving unemployment benefits "does not equate to Plaintiff being able to perform substantial gainful activity."  Doc. 22 at 14 (quoting *O'sNeal v. Astrue*, No. 3:08-cv-63-J-MCR, 2009 WL 702865, at *11 (M.D. Fla. Mar. 17, 2009)).  Instead, Plaintiff asserts the ALJ should have assessed her credibility based on her statements of pain, symptoms and objective evidence.  Doc. 22 at 14.  Accordingly, Plaintiff claims substantial evidence does not support the ALJ's credibility finding.  *Id.* at 15-16.  The Commissioner responds the ALJ properly evaluated Plaintiff's credibility, and any error in the credibility finding was harmless.  Doc. 23 at 12-15.

The Eleventh Circuit long has recognized that "credibility determinations are the province of the ALJ."  *Moore,* 405 F.3d at 1212 (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).  If objective medical evidence does not confirm the

---

[4] Plaintiff admits she received benefits for three quarters.  Doc. 22 at 15.

severity of the alleged symptoms but indicates the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1) (2014); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Plaintiff argues that the ALJ may not discount her credibility based on her receiving unemployment benefits. Doc. 22 at 14. In contrast, the Eleventh Circuit has upheld the ALJ's discounting the claimant's credibility based on the claimant's receipt of unemployment benefits. *Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016). The ALJ in *Robinson* discounted the claimant's credibility partly because the claimant received unemployment benefits, noting "in order to qualify for unemployment benefits, which [the claimant] continued to receive, [the claimant] had to attest that he was ready, willing and able to work, calling in question his position that he was disabled and unable to work." *Id.* After reviewing the ALJ's decision, the Eleventh Circuit held the ALJ's credibility finding "was articulated with substantial supporting evidence in the record." *Id.*

Similarly, other courts in this district have found that an ALJ may properly consider a claimant's receipt of unemployment benefits in assessing the claimant's credibility. *Robinson v. Colvin*, No. 8:14-CV-1533-T-TGW, 2015 WL 12856784, at

*12 (M.D. Fla. Aug. 17, 2015) (finding that the ALJ properly considered the plaintiff's collection of unemployment benefits in discounting his credibility because "the plaintiff's certifications to the state of Florida that he was able and willing to work, at the same time he represented to the Social Security Administration that he was entitled to disability insurance benefits because he was unable to work, are contradictory statements that diminish the plaintiff's credibility."); *Kalishek v. Astrue*, No. 8:10-cv-714-T-23AEP, 2011 WL 4389643, at *5 (M.D. Fla. Aug. 23, 2011) ("[A]n ALJ may certainly consider a claimant's receipt of unemployment compensation in making a credibility determination."); *Boyd v. Astrue*, No. 3:10-cv-105-J-JRK, 2011 WL 1259795, at *7 (M.D. Fla. Mar. 31, 2011) ("[T]he ALJ properly considered Plaintiff's receipt of unemployment compensation in making a credibility determination."). Accordingly, the Court finds that the ALJ here properly considered Plaintiff's receipt of unemployment benefits to discount her credibility. Tr. 20; *see Robinson*, 2015 WL 12856784, at *12; *Kalishek*, 2011 WL 4389643, at *5; *Boyd,* 2011 WL 1259795, at *7; *Robinson,* 649 F. App'x at 802.

Furthermore, the ALJ considered Plaintiff's evidence as a whole, citing unemployment benefits as only one of several reasons to discount her credibility. Doc. 22 at 14-16; Tr. 20, 27-31. Based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms reasonably can be accepted as consistent with the objective medical and other evidence. Tr. 27-31. After properly discussing the standard and Plaintiff's extensive medical evidence, the ALJ found that:

> [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to further reduce her [RFC]. She has not presented consistent factors suggesting she would be unable to maintain activity in accord with the limitations allowed for in the identified [RFC] assessment.

Tr. 31.

Here, based on his detailed and extensive analysis of Plaintiff's evidence as a whole, the ALJ discounted Plaintiff's credibility for the reasons well-articulated in the decision, such as Plaintiff's treatment history, daily activities and testimony. Tr. 27-31. "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). "The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. Because the ALJ clearly articulated his credibility finding, substantial evidence supports his decision.

### c. Whether the ALJ properly considered the disability decision of a nongovernmental agency

Plaintiff worked as an administrative assistant and data analyst for 21st Century Oncology from February 2005 to November 9, 2010 and alleges her employer terminated her because her impairment-related symptoms led to her frequent

absences at work. Doc. 22 at 16; Tr. 239. Toward the end of her employment, the ALJ accurately noted that "[Plaintiff] was approved for short-term disability benefits through Lincoln Financial Group beginning on June 18, 2010, and extending through November 17, 2010." Tr. 23, 178-79, 623-25.

Lincoln Financial Group approved Plaintiff's claim for short-term benefits in a letter dated June 21, 2010. Tr. 623. The company provided four subsequent letters to Plaintiff extending Plaintiff's benefits to November 17, 2010. Tr. 178-79, 624-25. The last one dated November 23, 2010 states, in relevant part:

> We are writing to you regarding your claim for Short Term Disability benefits. We previously approved benefits to 10/1/2010 and have recently received updated medical documentation for consideration of additional benefits.
>
> Based on the information received, your benefits have been extended to 11/17/2010. To consider benefits beyond this date, you will need to provide our office with current medical documentation.
>
> Medical documentation refers, but is not limited to, office and treatment notes, progress notes, testing and/or laboratory results, x-ray results, therapy notes and operative reports. This documentation may be obtained from your physician and should be provided at your own expense. A note from your physician, without any supporting medical documentation, may not be sufficient to consider further benefits.

Tr. 179.

By letter dated November 9, 2010, 21st Century Oncology terminated Plaintiff's employment:

> You have been absent from work since November 5, 2010, and have exhausted all your Personal Paid Time. You are ineligible for any additional leave of absence as required by state and federal laws or under any company policy. As there is no leave status available for a leave of absence and you are unable to return to work at this time, we

must regrettably terminate your employment effective November 9, 2010.

Information regarding your rights under COBRA will be sent to you separately. Please contact Kasha Holt, at the office to arrange time to *drop off any keys or company equipment still in your possession*.

Should you be interested in future employment with the organization please log on to www.21stcenturyontology.com for a list of current openings. We appreciate your service to the company and certainly wish you well in the future. You can reach me at 239-931-7335 with any questions.

Tr. 626 (emphasis in original). Plaintiff states that her termination resulted in a cessation of her disability benefits. *Id.*; Doc. 22 at 17.

The ALJ briefly noted in his credibility finding that "[i]t is also noteworthy that [Plaintiff's] short-term disability payments ceased November 17, 2010." Tr. 28. In assessing her RFC, the ALJ further discussed Plaintiff's short-term benefits as follows:

[Plaintiff] testified that she was on 12[-week] medical leave starting in June 2010, but went back to work in September 2010, and worked until November 10, 2010. She testified that she was having problems doing her job and work ended in November when her doctor took her off work again. However, the letter from Lincoln Financial Group states benefits were extended until November 17, 2010, and consideration for benefits beyond this date would require current medical documentation. It also stated that a note from a physician without any supporting medical documentation would not be sufficient to consider further benefits. Thus, it is reasonable to find that supporting evidence was not submitted and therefore benefits terminated after which her employment was terminated. However, the letter from employer states she was not eligible for any additional leave of absence after exhausting her personal paid time. There was no indication in the letter that she was unable to do her job or was having difficulty completing her job duties. She testified that she fell asleep a few times at her computer while working at 21st Century, but there is no indication in the record she was reprimanded or fired for this.

Tr. 30.

Plaintiff argues that the ALJ misinterpreted her loss of short-term benefits as if her benefits were ended because she did not submit supporting medical evidence, asserting instead her employment termination actually led to the cessation of her short-term disability benefits. Doc. 22 at 17. Plaintiff further argues there is no evidence that supports the ALJ's analysis regarding the cessation of her short-term benefits. Doc. 26 at 6. Similarly, she claims no evidence supports the ALJ's finding that she had no difficulty completing her job. *Id.* The Commissioner responds that the ALJ's factual findings are entitled to deference, and his error, if any, was harmless. Doc. 23 at 15-16.

While Plaintiff may be correct that no evidence supports the ALJ's inference regarding Plaintiff's loss of her benefits, likewise there is no evidence of record supporting Plaintiff's contention that her benefits were ceased because 21st Century Oncology terminated her employment. Docs. 22 at 17, 26 at 5. Furthermore, contrary to Plaintiff's argument, her employer's termination letter supports the ALJ's finding. Tr. 30 (noting there was "no indication in the letter that [Plaintiff] was unable to do her job or was having difficulty completing her job duties."), 626. Indeed, the ALJ accurately observed "the letter [] states she was not eligible for any additional leave of absence after exhausting her personal paid time." Tr. 30, 626. Although the ALJ could have drawn a different inference from the termination letter, as suggested by Plaintiff, the Court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." Docs. 22 at 16-17, 26 at

5-6; *Dyer*, 395 F.3d 1210 (alteration in the original) (citations and internal quotation marks omitted); *Davis v. Comm'r of Soc. Sec.*, 11 F. Supp. 3d 1154, 1165 (M.D. Fla. 2014) (citing *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963)) ("[I]t is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.").

To the extent that the ALJ may have committed an error, the Court finds that it was harmless. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) ("To the extent that an [ALJ] commits an error, the error is harmless if it did not affect the judge's ultimate determination."). The ALJ's analysis of Plaintiff's short-term benefits was only part of his extensive findings regarding Plaintiff's credibility. Tr. 27-31. The Court already found that the ALJ applied proper legal standards and assessed her credibility based on his thorough review of the entire record, including her treatment history, daily activities and testimony. *Id.* Given the ALJ's extensive discussion, the weight of the evidence and the Court's findings, the ALJ's error, if any, in analyzing Plaintiff's short-term benefits was harmless because it did not affect the ALJ's ultimate assessment of her credibility. Tr. 27-31; *see Hunter*, 609 F. App'x at 558 (citing *Diorio*, 721 F.2d at 728). As a result, the Court will not disturb the ALJ's findings regarding Plaintiff's short-term benefits and does not find remand appropriate on this ground. Tr. 28, 30.

### V.    Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff was not disabled from November 10, 2010 to September 30, 2014 is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 29th day of September, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record